UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARLOS R. C. G.,

                      Plaintiff,

v.

NANCY BERRYHILL
*Acting Commissioner of Social Security*,

                      Defendant.
_____

5:17-CV-0781
(GTS)

APPEARANCES:

CARLOS R. C. G.
  Plaintiff, *Pro Se*
338 Gifford Street, Apt. 504
Syracuse, New York 13204

SOCIAL SECURITY ADMINISTRATION
OFFICE OF GENERAL COUNSEL–REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, New York 10278

OF COUNSEL:

SIXTINA FERNANDEZ, ESQ.
Special Assistant U.S. Attorney

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

Currently before the Court, in this action filed by Carlos R. C. G. ("Plaintiff") against the Commissioner of Social Security ("Defendant") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), is Defendant's motion for judgment on the pleadings. (Dkt. No. 16.) For the reasons set forth below, Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1964, making him 44 years old at the alleged onset date, 48 years old at the application filing date, and 51 years old at the date of the ALJ's decision. Plaintiff reported having a ninth grade education. The vocational expert found that Plaintiff had past work as a janitor, laundry sorter, garbage collector, and recycler. In his application, Plaintiff alleged disability due to arthritis in his spine, degenerative joint pain, high cholesterol, high blood pressure, plantar fasciitis in the right foot, chronic pain and fatigue, severe headaches, poor memory, respiratory problems, and sleep apnea.

### B. Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on November 6, 2012, alleging disability beginning December 31, 2009. Plaintiff's applications were initially denied on January 11, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at hearings before ALJ Elizabeth W. Koennecke on April 17, 2014, and August 27, 2014. On September 8, 2014, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 161.)[1] On December 15, 2015, the Appeals Council remanded that decision for further proceedings. (T. 192-93.) Plaintiff appeared at an additional hearing on August 23, 2016, for the purpose of taking new vocational expert testimony. On September 6, 2016, the ALJ again issued a written

---

[1] The Administrative Transcript is found at Dkt. No. 12. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

decision finding Plaintiff was not disabled under the Social Security Act. (T. 15-37.) On June 5, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

    **C.    The ALJ's Decision**

Generally, in her decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 18-36.) First, the ALJ found that Plaintiff was insured for benefits under Title II until June 30, 2014. (T. 18.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his application filing date. (*Id.*) Third, the ALJ found that Plaintiff's degenerative joint disease of the bilateral knees, degenerative disc disease of the lumbar spine, obesity, obstructive sleep apnea, and mental impairment are severe impairments; however, the ALJ found that his dental pain, chest pain, thumb and foot lacerations, fracture of the coronoid process in his elbow, hypertension, diabetes, high cholesterol, cardiac disorders, digestive disorders, adrenal gland nodule, kidney injury, headaches, history of intercranial hemorrhage, venous insufficiency, varicose veins, and foot disorders are not severe impairments. (T. 18-20.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 20-25.) Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 3.09 (cor pulmonale secondary to chronic pulmonary vascular hypertension), 3.10 (sleep-related breathing disorders), 12.02 (organic mental disorders), 12.03 (schizophrenic, paranoid, or other psychotic disorders), 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance addiction disorders). (*Id.*) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

-3-

> a range of work at all exertional levels as defined in . . . 20 CFR 404.1567(a) through (e) and 416.967(a) through (e), with additional limitations. Specifically, the claimant has no limitation in his ability to lift, carry, push or pull; has no limitation in his ability to sit; has no limitations in his ability to stand; can walk for two hours total in an eight-hour workday; retains the ability to understand and follow simple instructions and directions; can perform simple tasks with supervision and independently; can maintain attention/concentration for simple tasks; can regularly attend to a routine and maintain a schedule; can relate to and interact appropriately with others to the extent necessary to carry out simple tasks; and can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require the claimant to supervise or manage the work of others.

(T. 25.) Sixth, the ALJ found that Plaintiff is able to perform his past work as a laundry laborer and recycler. (T. 35.) Seventh, in the alternative, the ALJ found that Plaintiff remains able to perform a significant number of other jobs in the national economy including as a toll collector, ticket seller, and ticket taker. (T. 36.) The ALJ therefore concluded that Plaintiff is not disabled.

### D.     The Parties' Briefings on Defendant's Motion

#### 1.     Plaintiff's Failure to File a Brief

Plaintiff did not file a brief in this matter despite being afforded the opportunity to do so. (*See generally* Docket Sheet.) Specifically, the Court issued a Text Order on October 3, 2017, in which it indicated that Plaintiff had until November 16, 2017, to file a brief or a request for extension of time, after which time Defendant had 60 days to file its brief. (Text Order filed 10/3/2017.) Plaintiff did not file a brief or extension request by November 16, 2017, and Defendant filed her brief on January 16, 2018. (Dkt. No. 16.) The Court issued a Text Order on January 16, 2018, stating that Plaintiff had until March 2, 2018, to file a brief. (Text Order filed 1/16/2018). However, Plaintiff did not file a brief by that date, and has not filed a brief as of the date of this decision. (*See generally* Docket Sheet.) The Court is entitled to consider the record

without the benefits of any argument Plaintiff might have put forth in support of his appeal. General Order #18, at 7.

### 2. Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes four arguments in support of her motion for judgment on the pleadings. (Dkt. No. 16, at 16-25 [Def.'s Mem. of Law].) First, Defendant argues that the ALJ's RFC finding is supported by substantial evidence. (*Id.* at 16-21.) More specifically, Defendant argues that the ALJ appropriately relied on the objective medical evidence and the treatment notes, and appropriately weighed the opinion evidence in the record. (*Id.*)

Second, Defendant argues that the ALJ's credibility finding is supported by substantial evidence. (*Id.* at 21-23.) More specifically, Defendant argues that the ALJ specifically considered factors such as Plaintiff's reported activities of daily living that were inconsistent with his alleged disability when determining that Plaintiff's allegations of disability were not wholly credible. (*Id.* at 22-23.)

Third, Defendant argues that the ALJ's Step Four finding is supported by substantial evidence. (*Id.* at 23-24.) More specifically, Defendant argues that Plaintiff has not met his burden to show that he was unable to perform the demands of his past work as a laundry laborer and recycler as he actually performed those jobs. (*Id.*)

Fourth, and last, Defendant argues that the ALJ's alternative Step Five finding is supported by substantial evidence. (*Id.* at 24-25.) More specifically, Defendant argues that the ALJ appropriately applied the Medical-Vocational Guidelines and relied on the testimony of a vocational expert based on a hypothetical question encompassing Plaintiff's established limitations. (*Id.*)

## II.   APPLICABLE LEGAL STANDARDS

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Whether the ALJ's RFC Determination is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 16-21 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 [2d Cir. 2008]). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 [2d Cir. 2013]). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (Carter, M.J.) Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (Suddaby, C.J.)

(citing *Atwater v. Astrue*, 512 F. App'x 67, 70 [2d Cir. 2013]). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. *See* 20 C.F.R. § 404.1527(c)(1)-(6). Additionally, when weighing opinions from sources who are not considered "medically acceptable sources"[2] under the regulations, the ALJ must consider the same factors as used for evaluating opinions from medically acceptable sources. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (Mordue, C.J.) (citing *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 [E.D.N.Y. 2010]); SSR 06-03p, 2006 WL 2329939.

In making her determination, the ALJ afforded great weight to the opinion from consultative examiner Kalyani Ganesh, M.D., some weight to the opinion from consultative examiner Richard Weiskopf, M.D., some weight to the opinion from nurse practitioner Rachel Romlough, N.P., little weight to the opinion from Christina Caldwell, Psy.D., and little weight to the opinion from State Agency psychological consultant R. Altmansberger. (T. 28-30.) The Court finds that the ALJ appropriately weighed these opinions and appropriately relied on them (as well as the rest of the medical and other evidence) when formulating the RFC determination.

---

[2] Medically acceptable sources are noted to include the following: licensed physicians; licensed or certified psychologists; licensed optometrists; licensed podiatrists; and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

As to Plaintiff's physical functioning, on July 7, 2011, Dr. Ganesh observed that Plaintiff was in no acute distress, had a normal gait without use of an assistive device, could squat 50 percent of normal, could get on and off the exam table and up from a chair without difficulty, and had limited range of motion in the lumbar spine and hips, but did not exhibit tenderness, trigger points, pain with straight leg raising, abnormal strength in the lower extremities, or decreased range of motion in the knees. (T. 630-31.) Dr. Ganesh noted that Plaintiff's effort and cooperation on the examination were poor, and opined that Plaintiff had no gross difficulties in sitting, standing, walking, or using his upper extremities. (T. 631.) The ALJ found that this opinion was generally supported by the objective medical evidence, though she found that somewhat greater limitations in Plaintiff's ability to walk were warranted based on other evidence. (T. 28.)

On December 28, 2012, Dr. Weiskopf observed that Plaintiff was in no acute distress and was able to squat to 90 degrees and get on and off the examination table and chair, though he walked with a limp favoring the left leg and stood with his weight off of his left knee. (T. 771.) Dr. Weiskopf also observed that Plaintiff had tenderness to palpation in the central lumbar area and bilateral sacroiliac joints, limited lumbar spine range of motion, a positive left straight leg raising test, limited hip flexion, tenderness in his left knee, significant varicose veins, puffiness in the lower legs with no sign of edema, and marked trophic changes in the legs with discoloration. (T. 772.) Based on these findings, Dr. Weiskopf opined that Plaintiff had no limitations in his abilities to sit and stand, a mild limitation in his ability to walk, and moderate limitations in his abilities to bend, lift, climb, and carry. (T. 773.) The ALJ found that the additional exertional and postural limitations opined by Dr. Weiskopf were not well-supported by the objective medical evidence, noting that many of the observations made on his examination were not observed during Plaintiff's routine examinations with providers. (T. 29.)

On August 12, 2016, NP Romlough opined that Plaintiff had moderate limitations in his abilities to walk, stand, sit, lift, carry, push, pull, bend, and climb, but that he was capable of working up to 40 hours per week with reasonable accommodations including no heavy lifting, no standing for long periods of time, and frequent breaks. (T. 882-83.) The ALJ found this opinion was entitled to less weight than the opinion from Dr. Ganesh because NP Romlough had not been seeing Plaintiff for his orthopedic impairments, but rather had referred him for an orthopedic evaluation; the ALJ also noted that NP Romlough did not define what she meant by "breaks." (T. 30.) The ALJ concluded that, even if NP Romlough's opinion indicated greater limitations than the RFC, it suggested that Plaintiff would still be capable of performing the light-level jobs found at Step 5. (*Id.*)

The Court finds that the ALJ's consideration of these opinions is supported by substantial evidence. A review of the medical evidence in the record shows that, although Plaintiff had demonstrable symptoms of tenderness, pain, and decreased range of motion in his lumbar spine and knees, such findings were often fairly mild and did not indicate a greater ongoing restriction on his work-related physical functioning. (*See, e.g.*, T. 569, 608, 653, 656, 664, 697-98, 710, 749, 755, 775, 787, 825, 869, 890, 902-03.) Of note, Plaintiff was not observed to be using a cane after having healed from the surgery on his left knee in October 2009, with the exception of immediately following a small stroke in late August 2013. (T. 781.) Objective imaging of the lumbar spine and bilateral knees primarily show only mild to moderate degenerative findings. (T. 673-75, 632-33, 671, 784, 906.) The RFC finding need not adopt completely any one opinion so long as the ALJ's finding is supported by the evidence as a whole. *See Butler v. Comm'r of Soc. Sec.*, 16-CV-0500, 2017 WL 2834482, at *8 (N.D.N.Y. June 29, 2017) (Dancks,

M.J.) ("It is well-recognized that the ALJ need not adopt any opinion in its entirety, but rather is entitled to weigh all the evidence and adopt the limitations supported by the evidence."); *Fiducia v. Comm'r of Soc. Sec.*, 13-CV-0285, 2015 WL 4078192, at *3 (N.D.N.Y. July 2, 2015) (Mordue, J.) ("[T]he court notes that the ALJ is not required to adopt the healthcare provider's opinion in its entirety. The ALJ was free to rely upon the assessment, and assign it great weight, without adopting it in its entirety."). The Court finds that to be the case here.

The Court does note that it is somewhat concerned by the ALJ's apparent failure to discuss any of the evidence related to Plaintiff's lower leg edema, which appeared to be caused by venous insufficiency. The ALJ found that this impairment was non-severe; however, the record is replete with findings of +1, +2, and +3 edema in Plaintiff's lower extremities, as well as other findings that could suggest greater limitations in the use of the lower extremities at various times in late 2013 through early 2016 . (T. 710, 777, 779, 787, 789, 858, 875.) However, apart from vague recommendations to elevate his legs, there is no indication as to what the functional effect of this impairment and its symptoms would be, and no physician opines that this edema impacts Plaintiff's ability to stand or walk. The Court is therefore not convinced that the evidence is sufficient to show that the limitations imposed by this impairment would prevent Plaintiff from performing the various light work occupations identified by the vocational expert at Step 5. Consequently, any failure by the ALJ to more explicitly discuss the evidence related to this impairment, or in failing to find it severe, is harmless error because it would not change the ultimate outcome of the ALJ's decision.

As to Plaintiff's mental functioning, on July 7, 2011, Dr. Caldwell observed that Plaintiff was cooperative and well-groomed with a poor manner of relating, social skills and overall

presentation, normal posture and motor behavior, a depressed affect, a dysthymic mood, intact attention and concentration (although serial three testing took him a long time to complete), impaired recent and remote memory due to emotional distress, average intellectual functioning, a somewhat limited general fund of information, and fair-to-poor insight and judgment. (T. 626-27.) Dr. Caldwell opined that Plaintiff is able to follow and understand simple directions and instructions and perform simple tasks, but that he is limited in his abilities to maintain attention and concentration, maintain a regular schedule, learn new tasks and perform complex tasks independently, and is unable to make appropriate decisions, relate adequately with others, or deal appropriately with stress. (T. 627.) The ALJ afforded this opinion little weight because Dr. Caldwell had examined Plaintiff only once, her findings were inconsistent with findings from other routine mental status examinations with treating providers, and her findings were inconsistent with the opinion from NP Romlough,[3] which had found no limitations in areas of mental functioning. (T. 30.)

On July 18, 2011, R. Altmansberger opined that Plaintiff is moderately limited in understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance and being punctual, working in coordination with or proximity to others without being distracted, completing a normal workday or workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, interacting appropriately with the general

---

[3] In addition to the physical limitations discussed above, NP Romlough opined that there was no evidence of limitations in all the areas of mental functioning listed on the opinion form. (T. 882.)

-13-

public, accepting instructions and responding appropriately to criticism from supervisors, and responding appropriately to changes in the work setting. (T. 648-49.) The ALJ afforded this opinion only little weight because R. Altmansberger did not have the benefit of examining Plaintiff, did not have the ability to review records submitted after July 2011, and his findings of moderate social limitations were not supported by the record as a whole. (T. 30.)

The Court finds that the ALJ's consideration of these opinions and the overall mental RFC finding to be supported by substantial evidence. As the ALJ notes, the other treatment notes in the record, spanning between 2009 and 2016, do not indicate any significant mental impairments or symptoms. (*See e.g.*, T. 710, 755, 807, 901, 871-72.) It does not appear that Plaintiff sought treatment for his alleged mental impairments, and it was noted that his depression symptoms might in fact be related to his obstructive sleep apnea. (T. 712-13.) Given the almost total absence of objective evidence substantiating Plaintiff's alleged mental impairments, the Court cannot say the ALJ erred in declining to rely on the opinions from Dr. Caldwell and R. Altmansberger, particularly as the ALJ did account for some mental limitation in the form of a limitation to unskilled work despite the lack of mental health treatment evidence.

For the above reasons, the Court finds that the ALJ's RFC determination is supported by substantial evidence. Remand is not warranted on this basis.

### B.     Whether the ALJ's Credibility Finding Is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 21-23 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (Suddaby, J., Bianchini, M.J.) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 [N.D.N.Y. 1999] [Kahn, J., Smith, M.J.]). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]; *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 [2d Cir. 1984]). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (Kahn, J., Bianchini, M.J.) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 [2d Cir. 1999]).

Here, the ALJ provided a number of reasons for finding that Plaintiff's allegations were not wholly credible, including (a) significant gaps in physical treatment, (b) failure to follow treatment recommendations, (c) the receipt of only routine care without treatment by specialists, (d) Plaintiff's inconsistent statements as to his impairments and symptoms, (e) a lack of

outpatient mental health treatment or hospitalizations for acute care, (f) a lack of substantiation in the treatment records for symptoms such as fatigue and tiredness, (g) Plaintiff's reported activities of daily living, (h) evidence showing his symptoms were controlled with medications and other conservative measures, and (i) evidence that he worked a job in 2013 that required significant standing, walking, or sitting. (T. 26-28, 31-32.) After reviewing the evidence, the Court finds that these reasons are sufficient to establish that the ALJ's credibility finding was supported by substantial evidence. Remand is therefore not warranted on this basis.

C.     **Whether the ALJ's Step Four Finding Is Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 23-24 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

"At step four of the analysis, the ALJ must consider whether the plaintiff has the RFC to perform his or her past relevant work." *Grogg v. Comm'r of Soc. Sec.*, No. 5:11-CV-1381, 2014 WL 1312325, at *12 (N.D.N.Y. Mar. 31, 2014) (Mordue, J.) (citing 20 C.F.R. § 404.1520[a][4][iv]). "In order to survive step four, 'the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally. This inquiry requires separate evaluations of the previous job and the job as it is generally performed.'" *Grogg*, 2014 WL 1312325, at *12 (quoting *Jasinski v. Barnhart*, 341 F.3d 182, 185 [2d Cir. 2003]). However, "[i]n determining whether a claimant can perform his or her past relevant work as generally performed, '[t]he inquiry ... is not whether a claimant is able to perform the duties of her previous job, but whether the claimant is able to perform the duties associated with her previous 'type' of work.'" *Grogg*, 2014 WL 1312325, at *12 (quoting

-16-

*Halloran v. Barnhart*, 362 F.3d 28, 33 [2d Cir. 2004]). Therefore, "[t]o meet her burden of proof at step four of the disability determination process, a claimant must demonstrate, not only that she is unable to return to her former work, but also that she is unable to return to her former type of work." *French v. Apfel*, 62 F. Supp. 2d 659, 663-64 (N.D.N.Y. July 14, 1999) (Kahn, J., Smith, M.J.) (citing *Jock v. Harris*, 651 F.2d 133, 135 [2d Cir. 1981]).

Here, the evidence as a whole does not establish that Plaintiff has met his burden to show he is unable to perform his past relevant work both as generally performed and as actually performed. As an initial matter, the Court notes that the evidence supports the ALJ's finding that Plaintiff's work as a laundry laborer and recycler was performed within the last 15 years at the level of substantial gainful activity for long enough for Plaintiff to learn the work. (T. 438-78, 540, 543, 545.) These jobs therefore were properly considered as past relevant work. As to whether Plaintiff remained able to perform these jobs, the vocational expert testified that his positions as a laundry laborer and recycler are both classified as medium work by the Dictionary of Occupational Titles ("DOT"), but that Plaintiff actually performed that work at the light level based on his testimony at the hearing. (T. 73-75.) The vocational expert testified that Plaintiff would be able to perform his work as a laundry laborer and recycler with the limitations in the RFC. (T. 78.) Because the testimony of the vocational expert establishes that Plaintiff remained able to perform his past relevant work as a laundry laborer and recycler and the record contains no contrary evidence, the Court finds that Plaintiff has not met his burden at Step Four and that the ALJ's finding is supported by substantial evidence. Remand is not warranted on this basis.

### D. Whether the ALJ's Step Five Finding Is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 24-25 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 [2d Cir. 2012]). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [] and [the hypothetical] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 [2d Cir. 1983]; citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 [2d Cir. 1981]).

As discussed above in Part III.A of this Decision and Order, the ALJ's RFC finding is supported by substantial evidence. Because the ALJ based the hypothetical question posed to the vocational expert on the limitations in the RFC, that hypothetical reflected all the supported limitations on Plaintiff's ability to work. Consequently, the vocational expert's testimony in response to that hypothetical as to the other work Plaintiff remained able to perform in the national economy constitutes substantial evidence to support the ALJ's Step Five finding. Remand is not warranted on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 21, 2018
 Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge